**Michael Hill CAIN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 79A02–9012–CR–00758.**

Court of Appeals of Indiana, Second District.

July 2, 1992.

Robert C. Perry, Steckler, Perry and Ryan, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Appellant Michael Hill Cain was sentenced to a term of forty (40) years after being convicted of two counts of Robbery while armed with a deadly weapon,[1] two counts of Criminal Confinement while armed with a deadly weapon,[2] one count of Conspiracy to Commit Robbery while armed with a deadly weapon,[3] all Class B felo-

nies, and being found an habitual offender pursuant to I.C. 35–50–2–8.[4] Cain presents the following issues for our review:

 I. whether the trial court erred in denying Cain's motion to suppress certain testimonial and physical evidence based upon his claim that the evidence was the fruit of an illegal arrest;

 II. whether the prosecutor's extraction of testimony from a co-conspirator by threatening to bring charges against his girl-friend denied Cain a fair trial;

 III. whether the testimony of an alleged co-conspirator was admitted without sufficient independent evidence to prove the existence of a conspiracy in which Cain was a participant;

 IV. whether the evidence was sufficient to sustain the convictions upon the substantive charges; and

 V. whether the evidence was sufficient to sustain the habitual offender determination?

We reverse the conviction upon one count of robbery and affirm in all other respects.

The facts most favorable to the judgment reveal that Cain, Edward Shepard and William Dean met on January 30, 1990 and discussed how they could obtain money. The three discussed the possibility of robbing a bank, a liquor store or a grocery store. They met again on February 1 and agreed to rob the Salin Bank in West Lafayette. Dean was to rob the bank and put the money in Shepard's car, which was to be parked near the bank. Cain was to drop Dean off at the bank and pick him up after the robbery.

Later that day, Dean entered the Bank, pulled a gun, approached Doris Wilkinson, a teller, and demanded that she give him the money in her drawer. She complied. Janice Marvin, a supervisor, entered the

---

**1.** I.C. 35–42–5–1 (Burns Code Ed.1985).

**2.** I.C. 35–42–3–3 (Burns Code Ed.Supp.1992).

**3.** I.C. 35–41–5–2 (Burns Code Ed.1985).

**4.** (Burns Code Ed.Supp.1992).

room, whereupon Dean demanded that she give him the money from a second teller window. Marvin gave Dean the money from her window, which included "bait" money with marked serial numbers. Dean then told the two to get on the floor. They did, and remained there for a few minutes. When they finally got up Dean was gone. Marvin called the police and locked the bank.

On February 2, Dean went to the home of Timothy Buck and asked to borrow Buck's car. Dean was carrying a red satchel around his waist. Buck refused to let Dean borrow his car, and shortly thereafter, the car was stolen. Later that day, the car was recovered. The police searched the car with Buck's permission and found Dean's satchel, which contained $2622.00, including some of the marked bills from the bank. In a separate search of Shepard's house pursuant to a warrant, the police recovered another $8000, including additional marked bills, in a tool box.

## I.

■ Cain first alleges that the testimony of Shepard, the State's key witness, should have been suppressed as the fruit of an illegal arrest. Even assuming *arguendo* that Cain's detention amounted to an illegal arrest, the evidence which he seeks to suppress is not excludible as fruit of the poisonous tree because the causal link between the arrest and the discovery of Shepard as a witness is too attenuated to taint the testimony.

Officer Danny Money was on patrol in the vicinity of the Salin Bank when he received a radio report about the robbery. The report stated that a black male was involved. Money observed a black male driving a white Cadillac from the direction of the scene of the robbery and reported this information to his dispatcher. Money could not see any license plates on the car, although he later determined that the car had dealer plates laying down on the back deck of the car which were not visible from Money's vantage point. Lieutenant Jerry Loy, who was investigating the robbery, advised Money that the car was known to

be operated by Cain, who was a suspect in another robbery. On the basis of these facts, Money stopped Cain.

Officer Money ordered Cain to step out of his car and to put his hands on his head. Money then ordered him to lay on the ground. Money searched Cain, handcuffed him, helped him up, and put him in the back of the patrol car. The officer held him there approximately ½ hour until Lieutenant Loy brought Wilkinson, one of the victims, to the scene. Wilkinson looked first at Cain's drivers' license and then directly at Cain, who was in handcuffs. Wilkinson stated that she was 90% certain that Cain matched the physical description of the man who robbed the bank (and whose face had been concealed by a ski mask) but stated that she could not be 100% certain. Later that evening, Cain appeared in a line-up at which Marvin, the other victim, attempted to identify him. At the line-up, Marvin erroneously picked out two persons not including Cain.

Sometime after Cain's arrest, Special Agent Franklin J. Fabian of the F.B.I. became involved in the robbery investigation. Fabian believed that more than one person had been involved the robbery. Since Cain was a suspect upon the basis of the foregoing facts, Fabian began contacting Cain's friends and associates. During the course of this investigation, Fabian discovered that Dean was Cain's friend and that Shepard was Cain's brother. Further investigation revealed the existence of the conspiracy and the involvement of each of the three.

Cain does not present specific arguments to demonstrate that Fabian's discoveries were fruits of the allegedly illegal arrest; rather, he appears to assume that Fabian would not have conducted any inquiry into his personal life if he had never been arrested, and therefore, none of the three would ever have been implicated.

Evidence may be excluded as fruit of the poisonous tree. *Wong Sun v. United States* (1963) 371 U.S. 471, 485, 83 S.Ct. 407, 417, 9 L.Ed.2d 441. In *Wong Sun*, the court discerned no distinction between testimonial and physical evidence. However,

in *United States v. Ceccolini* (1978) 435 U.S. 268, 279, 98 S.Ct. 1054, 1061, 55 L.Ed.2d 268. the Court, speaking through Justice Rehnquist, drew such a distinction and stated that a closer, more direct link between the illegality and the evidence is required for testimonial evidence. Where a defendant seeks to exclude testimonial evidence as the result of an illegal search, the court must inquire whether the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint. *Id.,* 98 S.Ct. at 1059. Even the dissenters in *Ceccolini* acknowledged that the taint might be dissipated by attenuation.

In the present case, the only "fruit" of the unlawful arrest was Wilkinson's identification. Cain did not make any incriminating statements, nor was any physical evidence recovered during the detention. Wilkinson later recanted her identification, however, and testified before the jury upon Cain's cross-examination that although she had identified Cain at the time of the detention, she was now sure that he was not in fact the man who committed the robbery. Special Agent Fabian was not present at the scene of the arrest, and only became involved in the investigation afterwards, at which time Cain had already stood in the line-up at which he was not identified. At the time Fabian began his inquiries, he knew Cain was seen driving away from the vicinity of the robbery shortly after it was committed, that Cain was suspected of another robbery, and that Cain had recently been released from prison. These facts appear independent of the arrest.

Thus, the only evidence directly arising out of the detention was Wilkinson's identification, which was not ultimately used against Cain at trial. Cain nevertheless asserts that Shepard's testimony should have been excluded on the basis of the illegal detention.

The exclusionary rule serves a broad purpose of deterring lawless police conduct.

It also "serves another vital function—'the imperative of judicial integrity'," i.e., that the courts will not be a party to convictions obtained by virtue of lawless invasions of constitutional rights. *Terry v. Ohio* (1968) 392 U.S. 1, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889. These purposes must be weighed against the cost of encroaching upon the public interest in prosecuting those accused of crime and having them fairly convicted upon the basis of evidence which exposes the truth. *Ceccolini, supra,* 98 S.Ct. at 1060. Consideration of these competing policies has led the Court to carefully define the scope of the fruit of the poisonous tree doctrine and its exceptions. *See United States v. Ramirez–Sandoval* (1989) 9th Cir. 872 F.2d 1392, 1395–96. Whereas the Court has consistently excluded tainted evidence, it has avoided immunizing the victims of illegal arrests from all further investigation and prosecution for the crimes. It simply requires that the State use only "clean" evidence in proving its case before the jury. Thus, *Ceccolini* and its progeny require a careful inquiry into the causal connection between the illegal arrest and the discovery of the evidence, particularly where, as here, the evidence sought to be suppressed is testimonial.

As noted above, it is not demonstrated that Special Agent Fabian relied upon Wilkinson's identification in deciding to investigate Cain. There were ample independent facts and inferences to justify the further investigation of Cain.[5]

■ The evidence uncovered through Special Agent Fabian's investigation was properly admitted into evidence because the causal link between the information discovered as a result of the arrest, if any, was too attenuated to Fabian's decision to investigate Cain and the information which the investigation uncovered to be considered fruit of the allegedly illegal arrest. In effect, Cain is asking us to hold that an investigation of a criminal suspect must be abandoned after the suspect has been subjected to an illegal arrest. The fruit of the

---

**5.** We do not suggest that every police investigation must be justified by a particular quantum

of evidence.

poisonous tree doctrine is not to be interpreted so broadly.

## II.

Cain next challenges the validity of Shepard's testimony. Shepard agreed to testify as part of a plea bargain with the State. Our Supreme Court recently addressed the admissibility of witness testimony given as part of a plea bargain. In *Mott v. State* (1989) Ind., 547 N.E.2d 261, 264 the Court held: "The acquisition of a statement known to have been tailored by a witness to conform to the expectations of his interrogators so as to escape the physical or mental pressures being exerted on him and the knowing use of such perjured testimony constitutes misconduct by the State and is a denial of due process."

Cain does not allege that Shepard's testimony was perjured. Instead, he asserts that Shepard only agreed to testify because the State threatened to bring groundless charges against his girlfriend Bessie Ware. Cain argues that Shepard's testimony should have been suppressed because it was coerced by the prosecution's illegitimate threats, and therefore, violative of Cain's due process rights.

 Indiana courts have long recognized that the voluntariness of a defendant's confession may be attacked when the State makes threats against the family of the accused, even when the threats may be enforced. *Hall v. State* (1971) 255 Ind. 606, 266 N.E.2d 16. In order to prevail upon such a challenge, however, the defendant must present evidence of direct threats made by the police. *Brown v. State* (1992) Ind., 587 N.E.2d 111, 113-14. Mere explanations of the possible consequences of a defendant's spouse being charged, or contradictory evidence as to whether threats were made is insufficient to vitiate the voluntariness of a confession, absent proof that threats were made directly to the defendant. *Neal v. State* (1988) Ind., 522 N.E.2d 912; *Brown, supra.*

In *Brown*, a conversation between the defendant's wife and the police led her to believe that if the defendant refused to cooperate with the police, they would charge her, and take the family's children from her custody. Wife related this information to the defendant, who then confessed to the police. The defendant later attempted to suppress the statement. Our Supreme Court upheld the trial court's admission of the statement, concluding that the evidence was conflicting as to what the police actually told the wife, and that the only communication to the defendant upon the subject came from the wife. The court found this basis inadequate to conclude that the statement was coerced. *Brown, supra,* 587 N.E.2d at 113-14.

Cain has cited no cases, and we are aware of none, applying these principles to the testimony of a witness, as opposed to that of the defendant himself. Cain is challenging the allegedly coerced testimony of Shepard, a third party, although there is no indication whatsoever that Shepard is dissatisfied with his own plea bargain. Secondly, Cain is attempting to keep out Shepard's entire testimony, not merely his confession. It is not essential that we decide whether these facts prevent Cain from challenging the voluntariness of Shepard's testimony, however, because Cain has not demonstrated that the State made the alleged threats in any event.[6]

 Ware testified that she received a phone call approximately one week before trial from Shepard's attorney informing her that the State was threatening to bring charges against her. Ware told Shepard she thought this was "unfair", whereupon Shepard sent word to the prosecutor that he would not testify unless the State agreed in writing not to charge her. The prosecutor responded to Shepard's demand in a letter, stating:

"Based upon information presently available to this office, and in the exercise of prosecutorial discretion, we do not

6. It would appear, however, that a voluntariness objection is personal to the person making the statement. The extent to which threats may have, in some degree, affected a third party's testimony goes to the weight to be given the testimony, not to its admissibility. *See Hale v. State* (1989) Ind., 547 N.E.2d 240; *Barnes v. State* (1978) 269 Ind. 76, 378 N.E.2d 839.

intend to charge Bessie Ware with any criminal offense in connection with the referenced armed robbery. We will, if necessary, move the court to grant Bessie Ware use immunity in exchange for her truthful testimony upon request by this office." Record at 1101.

The prosecutor's letter could be construed as the written agreement not to prosecute Ware demanded by Cain. However, it could also be read to state simply that the State neither threatened Ware nor intended to prosecute her. The only evidence of a threat is Ware's statement that Shepard's attorney told her that the prosecutor told him that the State might bring charges against her. This evidence is insufficient to prove that the State coerced Shepard's testimony by threatening to prosecute Ware.

### III.

During Shepard's testimony, he attributed several statements to William Dean, who had refused to testify on Fifth Amendment grounds and was thus unavailable for cross-examination. In addition, Shepard testified as to several details of the discussions involving himself, Cain, and Dean, which he could not attribute to anyone because he could not remember exactly who said what. Cain raised hearsay objections to these statements, and the State responded that they were within the co-conspirator exception to the hearsay rule. Cain now appeals the trial court's overruling of the objections.

■ Statements of co-conspirators made during the course of and in furtherance of a conspiracy are admissible against other members of the conspiracy. *Gregory v. State* (1988) Ind., 524 N.E.2d 275, 278. Before the acts or declarations of one conspirator are admissible into evidence against a co-conspirator, there must be some evidence, either direct or circumstantial, of the existence of a conspiracy; however, the evidence need not be strong. *Lopez v. State* (1988) Ind., 527 N.E.2d 1119, 1132. The existence of the conspiracy may be shown by non-hearsay testimony of the alleged co-conspirator alone. *Siglar v. State* (1989) Ind., 541 N.E.2d 944, 949. The determination as to when an adequate foundation has been laid to admit testimony under the co-conspirator exception is within the discretion of the trial court. *Id.*

In *Siglar*, the State was able to establish a *prima facie* case of conspiracy through the testimony of the co-conspirator alone. To do so, the State first established that the defendant had met several times with the alleged co-conspirator witness. Then, the State elicited testimony from the witness regarding a specific conversation, establishing that the two had agreed to commit the crime alleged. Our Supreme Court held that this foundation was adequate to establish the fact of the conspiracy so as to allow the witness to recount out-of-court statements made by an unavailable co-conspirator under the co-conspirator exception. Similarly, in *Brown v. State* (1980) 1st Dist. Ind.App., 403 N.E.2d 901, 910, this court upheld the introduction of hearsay testimony under the co-conspirator exception upon a foundation laid solely by the testimony of a co-conspirator describing a conversation in which the defendant solicited the witness to commit the crime. *See also Ingle v. State* (1978) 2d Dist., 176 Ind.App. 695, 377 N.E.2d 885, 892.

■ In the instant case, Marvin, a bank teller, testified before Shepard took the stand that the robber took bait money, and Buck testified that bait bills were recovered in Dean's red satchel. Upon taking the stand, Shepard testified that Dean, Cain, and he met at his house on January 30, 1990. He stated that the three discussed the possibility of obtaining money by committing a robbery. They discussed the advantages and disadvantages of robbing a grocery store, a liquor store and a bank, as well as the need for a weapon. They also discussed how each of them might participate in the robbery. Shepard then stated that the three met a second time and discussed the proposed robbery in greater detail, settling upon a target, the Salin Bank of West Lafayette.

The trial court did not abuse its discretion in finding this foundation sufficient to admit Shepard's testimony regarding the

hearsay statements of Dean and the unattributed statements made during the discussions between the three under the co-conspirator exception to the hearsay rule.

### IV.

Cain challenges the sufficiency of the evidence upon the charges of robbery, confinement and conspiracy. He concedes that a conviction is sustainable solely upon the evidence of a confessed accomplice. *Maynard v. State* (1987) 1st Dist.Ind.App. 508 N.E.2d 1346, 1354, *trans. denied.* However, he argues that the testimony of Shepard was incredible, and that, aside from his testimony, the evidence is insufficient to sustain the verdict.

■ Conflicts and inconsistencies in testimony, "even an allegedly incredulous account of the circumstances of the offense, do not conclusively amount to perjury. Rather, these are matters for the trier of fact to resolve." *Whittle v. State* (1989) Ind., 542 N.E.2d 981, 990. The credibility of a witness whose testimony has been induced by a favorable plea bargain is for the jury to determine. *Gebhart v. State* (1988) Ind., 525 N.E.2d 603.

At trial, Shepard was thoroughly cross-examined as to the details of the plea agreement and the State's agreement not to prosecute his girlfriend. In addition, Ware testified regarding the alleged threats. Thus, the issue of Shepard's credibility was clearly presented to and resolved by the jury.

■ The evidence is insufficient, however, to sustain both counts of robbery upon these facts. Where a defendant threatens two bank tellers during a single bank robbery but takes only property of the bank and not the personal property of the tellers, the defendant is guilty of only one robbery. *Randall v. State* (1983) Ind., 455 N.E.2d 916, 931; *Lane v. State* (1981) Ind., 428 N.E.2d 28, 31; *Williams v. State* (1979) 271 Ind. 656, 395 N.E.2d 239.

The record reveals that Dean entered the Salin Bank pursuant to an agreed-upon plan between Dean, Shepard and Cain, pointed a gun at Wilkinson, and demanded the money from her teller drawer. Marvin entered the room, whereupon Dean demanded that she give him the money from her drawer. Dean did not, however, take any of the personal possessions of Wilkinson or Marvin. He took only the property of the bank. He then ordered the two to lay on the ground. They complied, and Dean exited the bank.

Since Dean took only the property of the bank in a single criminal transaction, Cain's conviction cannot be sustained upon both counts. Therefore, we vacate the conviction upon count II for Robbery while armed with a deadly weapon against Janice Marvin pursuant to I.C. 35–42–5–1.

### V.

Finally, Cain challenges the sufficiency of the habitual offender determination, which the jury made pursuant to I.C. 35–50–2–8. The State alleged that Cain had been convicted of three prior felonies. However, none of the convictions were Indiana convictions. The first conviction was an Ohio conviction for Robbery,[7] an aggravated felony of the second degree. The second conviction was an Ohio conviction for Carrying a Concealed Weapon,[8] a felony of the third degree. The third conviction was a federal conviction for being a Felon in Possession of a Firearm.[9] Cain alleges that the trial court failed to instruct the jury as to whether the prior convictions were at least equivalent to Class D felonies under Indiana law, and therefore, that the jury had no basis upon which to determine whether he was an habitual offender.

■ The question whether an offense is a felony is a question of law for the trial court to decide, not an issue for the jury to resolve. *Seward v. State* (1983) Ind., 453 N.E.2d 256. Convictions from

7. Ohio Rev.Code § 2911.02 (Anderson Code Ed. 1987).

8. Ohio Rev.Code § 2923.12 (Anderson Code Ed. 1987).

9. 18 U.S.C. § 922(g)(1) (West Code Ed.1987).

jurisdictions other than Indiana for which a term of greater than one year is authorized constitute Class D felonies for purposes of Indiana's habitual offender statutes. I.C. 35–50–2–1 (Burns Code Ed.Supp.1992).

■ In the present case, sentences of greater than one year were authorized under each conviction.[10] In fact, Cain received an indeterminate sentence of 2–14 years for the Ohio robbery conviction, 2 years for the Ohio carrying-a-concealed-weapon conviction, and 14 months for the federal felon-in-possession-of-a-handgun conviction. Therefore, each conviction was to be considered as a Class D felony for habitual offender purposes.

■ I.C. 35–50–2–8(h) provides: "A person may not be sentenced as an habitual offender under this section if all of the felonies relied upon for sentencing the person as an habitual offender are Class D felonies." A conviction may be sustained under I.C. 35–50–2–8(h) where any of the three convictions underlying the habitual offender charge, i.e. the two prior convictions *and* the present conviction, are greater than a Class D felony. *Moredock v. State* (1987) Ind., 514 N.E.2d 1247, 1251; *Abron v. State* (1992) 2d Dist.Ind.App., 591 N.E.2d 634. Because Cain's present convictions are Class B felonies, the habitual offender determination pursuant to I.C. 35–50–2–8 was permissible.[11]

The conviction and judgment upon count II for Robbery while armed with a deadly weapon is vacated. In all other respects, the judgment is affirmed.

BUCHANAN and STATON, JJ., concur.

---

**10.** The Ohio Robbery statute authorizes 15 years, and is punishable by a minimum term of three or eight years, depending upon the prior record of the defendant. Ohio Rev.Code § 2929.11(B)(2)(a) (Anderson Code Ed.Supp. 1991). The Ohio Concealed Weapon conviction authorizes a maximum term of 10 years, and carries a two-year minimum. Ohio Rev.Code § 2929.11(B)(6) (Anderson Code Ed.Supp.1991). The federal conviction authorizes up to 10 years imprisonment. 18 U.S.C. § 924(a)(2) (West Code Ed.Supp.1991).

**11.** No issue has been presented regarding the arguable effect, if any, of I.C. 35–50–2–8(e). This provision permits diminution of a thirty-year enhancement if one of the prior felonies is a Class D felony.